UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA GODINEZ, on behalf of herself and others similarly situated, | |
| Plaintiff, | No. 24 CV 5968 |
| v. | Judge Georgia N. Alexakis |
| EPISCOPE COMPANIES, LLC D/B/A EPISCOPE HOSPITALITY, EPISCOPE MART, LLC, THEMART TOTS, LLC D/B/A MARSHALL'S LANDING, and DMK MICHIGAN AVE., LLC D/B/A EXCHANGE-224 S. MICHIGAN AVE. | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In 2021, plaintiff Anna Godinez began working at Chicago restaurant Marshall's Landing as a server and event server. After taking time off in December 2023 to take care of her ailing mother, Godinez was terminated. Godinez now sues Marshall's Landing, its corporate parent Episcope Hospitality, and related business entities (collectively, "the defendants") for violating the Americans with Disabilities Act ("ADA") and the Illinois Human Rights Act ("IHRA"). Godinez also sues under Chicago's Paid Leave and Paid Sick Leave Ordinance ("the Ordinance") and seeks to represent a class of similarly situated employees who she believes were, like her, denied use of sick leave to which they were entitled.

Defendants move to dismiss. [11]. For the below reasons, that motion is granted in part and denied in part.

I. **Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the section that follows), but a court need not accept legal conclusions or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

II. **Background**

Godinez worked as a server and event server at the Marshall's Landing restaurant in Chicago's River North neighborhood from May 2021 until December 2023 or January 2024. (The precise date is one issue in the case.) [1] ¶ 4. Marshall's Landing is the business name of theMart Tots, LLC, and is one of several restaurant brands owned and operated by Episcope Companies, LLC, which does business as Episcope Hospitality.[1] *Id.* ¶¶ 7, 19–22. All named defendants are part of the Episcope Companies corporate group. *Id.* ¶¶ 6–14, 19–22.

Defendants "hold themselves out as one integrated system and operate as such, with the parent entity Episcope Companies (doing business as Episcope Hospitality) controlling nearly every aspect of each brand's operations." *Id.* ¶ 24. This includes sharing centralized operations, managers, training, and policies. *Id.* ¶¶ 25–27. For example, Marshall's Landing shares a reservation booking and event inquiry portal

---

[1] Episcope Hospitality was formerly known as DMK Management, LLC, but rebranded in April 2024. [1] ¶ 19.

2

with restaurants The Exchange and The Founder's Room. *Id.* ¶ 28. And servers, bartenders, caterers, and other staff are permitted and encouraged to work interchangeably across Episcope Hospitality's Chicago restaurant brands. *Id.* ¶ 29. Godinez received her paychecks from Episcope Mart, LLC, but they were issued at the direction and control of Episcope Hospitality. *Id.* ¶ 6.

After being hired in May 2021, Godinez worked as a server at Marshall's Landing and other Episcope Hospitality restaurants. *Id.* ¶¶ 42–44. By October or November 2023, Episcope Hospitality management discussed having Godinez fill in for supervisory shifts when managers were unavailable. *Id.* ¶ 46. Godinez wished to continue working and advancing at Episcope Hospitality, and at this time had discussed with management restructuring her schedule so that Godinez could "work the same or similar number of hours but on fewer days." *Id*. According to Godinez, her revised schedule would begin in January 2024 after the restaurants' two-week closure around the winter holidays. *Id.* ¶¶ 46–48.

Tragically, Godinez's mother was diagnosed with cancer shortly after these discussions, and on December 9, 2023, Godinez informed Kelly Kniffen, the director of operations for all defendants, that she would need to take leave to care for her mother before the planned two-week closure. *Id.* ¶¶ 49–50. More specifically, Godinez needed leave for the following days when she had been scheduled to work as a server: December 10, 12, 13, and 14. *Id.* ¶ 51.

After the holiday closure, Godinez was never put back on the work schedule, despite contacting Kniffen repeatedly regarding returning to work. *Id.* ¶¶ 53–56. And

3

on February 5, 2024, Godinez was informed by defendants' director of human resources, June de Castro, that she had been terminated, with her termination date given as December 4, 2023. *Id.* ¶¶ 31, 58.

Godinez had roughly 53 hours of sick leave available on December 9, 2023, when she requested time off to care for her mother. *Id.* ¶ 65. Under defendants' sick leave policy, these hours of sick leave should have been applied to Godinez's planned shifts on December 10, 12, 13, and 14, but were not. *Id.* ¶¶ 66–67. Defendants' written policy, which is uniform across the Chicago restaurants, states that available sick time should be applied automatically when employees call out from their shift. *Id.* ¶¶ 36–37. At the same time, the sick leave policy "expressly restricts an employee's use of their accumulated sick leave based on the needs of the business" and limits use of sick leave to the employee's own illness. *Id.* ¶¶ 34–35. Defendants' managers implemented these aspects of the policy. *Id.* ¶¶ 38–39.

Godinez filed a charge with the Illinois Department of Human Rights ("IDHR") on April 1, 2024. [1-1]. The charge named Episcope Mart, LLC—the defendant that issued her paychecks—as the sole respondent and alleged that Godinez had been terminated because of her association with her ailing mother. *Id.* at 1–2. The charge also named both Kniffen and de Castro as employees of Episcope Mart, LLC. *Id.* at 1–2. Godinez opted out of the IDHR administrative process, *see* [23] at 10, and on April 30, 2024, IDHR issued a Notice of Opt Out of the Investigative and Administrative Process, which also functioned as a right-to-sue letter. [1-2].

4

On July 15, 2024, Godinez sued defendants in federal court for violating the Ordinance by not allowing her to use her accrued sick leave and retaliating against her for attempting to use that leave (Counts I and II). *Id.* ¶¶ 82–102. Godinez seeks to represent a class of similarly situated employees who, according to Godinez, defendants have denied use of sick leave to which they are entitled under the Ordinance (Count I). *Id.* ¶¶ 89–94. Godinez also brings individual claims under the ADA and IHRA (Counts III and IV) for associational discrimination, alleging that her mother's illness was a proximate cause of her termination. *Id.* ¶¶ 103–123.

Defendants now move to dismiss. [11].

### III. Analysis

#### A. Liability under the Ordinance (Counts I and II).

Defendants argue that Episcope Mart, LLC is the only entity that employed Godinez and that her claims under the Ordinance against the other defendants must therefore be dismissed. [11] at 4. According to defendants, Godinez's complaint has "at best" alleged facts that "suggest that the Other Defendants maintained some administrative involvement in Plaintiff's employment." *Id.* And defendants contend that mere administrative involvement would be insufficient to establish employer status. *Id.* at 4–5 (citing *Clifford v. Patterson Companies, Inc.,* No. 08 C 828, 2009 WL 3852447, at *9–10 (N.D. Ill. Nov. 18, 2009)). For her part, Godinez argues that she has adequately alleged single, alter ego, and joint employer liability against all defendants. [23] at 2–8.

The Court agrees with Godinez: At this phase of litigation, where the Court must take all Godinez's well-pleaded facts as true and make all reasonable inferences

5

in her favor, she has adequately alleged liability for all defendants under the Ordinance. The Court first addresses joint liability. Defendants rely on *Clifford* to argue that "some administrative involvement" would be insufficient to establish employer liability. 2009 WL 3852447, at *9–10. In *Clifford*, the titular plaintiff sought to bring federal employment discrimination claims against both his direct employer and its parent company under a joint employer liability theory. *Id.* at *1. The plaintiff argued that because the parent company issued his paychecks, referred to him as an employee in an agreement awarding him stock, and "informed him that he had obligations of confidentiality and non-disparagement," it was a joint employer. *Id.* at *9. But at summary judgment, the *Clifford* court concluded that the parent company was not a joint employer because "[t]he evidence on which [the plaintiff] relies focuses on the extent to which [parent company] Patterson Companies provided administrative and legal assistance to [Clifford's employer] Patterson Medical. It does not demonstrate that Patterson Companies exercised any control over Clifford's daily activities or workload." *Id.* at *10.

Godinez's situation is different. The "most important consideration" in determining whether an employment relationship exists is "the employer's exercise of control." *Harris v. Allen Cnty. Bd. of Commissioners*, 890 F.3d 680, 683 (7th Cir. 2018). As alleged, Episcope Hospitality "control[s] nearly every aspect of each brand's operations," including "policies, operations, and every other aspect of the restaurant brands"; each of the brands "share all operations, including managers, employees, and policies"; all defendants "utilize centralized reporting and management

6

structures"; employees like Godinez "work interchangeably across the Chicago restaurant brands"; there is just "one set of training materials and policies for all restaurant brands"; Kniffen "manages operations for all restaurant brands, including scheduling of all servers, bartenders, catering staff, kitchen staff, and other employees"; and all defendants share directors of operations and human resources, roles critical to day-to-day functions. [1] ¶¶ 19–32. Thus, unlike the parent company in *Clifford*, Episcope Hospitality exercises significant control over Godinez's "daily activities and workload."[2] *See also Harris*, 890 F.3d at 683 ("[U]nder any version of the test [for employer liability], the most important question is whether the putative employer exercised sufficient control over the plaintiff.").

Indeed, Godinez's complaint paints a picture of what is essentially one entity with different faces. Illinois law allows for so-called "alter ego liability" when "a unity of interest and ownership exists to justify disregarding separate corporate identities." *Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 959 (N.D. Ill. 2017) (citing *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751–52 (7th Cir. 2012)). Courts in this district have applied alter ego liability in wage and employment discrimination cases where the defendant "entities are so intertwined that there is a unity of interest

---

[2] Defendants rely on *McCurry v. Kenco Logistics Servs., LLC,* 942 F.3d 783 (7th Cir. 2019), to argue that because Episcope Mart, LLC was the only entity that paid and provided benefits to Godinez that she "falls far short of alleging the type of significant control sufficient to impose joint employer liability against the Other Defendants for non-payment of sick leave." [24] at 4. But *McCurry* does not *require* paychecks and benefits to establish significant control. Instead, the infirmity with the joint employer theory in *McCurry* was that the only evidence plaintiff presented of "significant control" at summary judgment was a contract between the entities and that "a regional distribution manager attended some meetings at the Manteno warehouse." *McCurry*, 942 F.3d at 790.

and ownership such that the [] entities do not exist as separate personalities." *Nicks*, 260 F. Supp. 3d at 962 (FLSA claim) (internal quotation marks omitted); *see also Gleghorn v. Mika Logistics Inc.*, No. 21 C 1357, 2022 WL 1228195, at *3–4 (N.D. Ill. Apr. 26, 2022) (race discrimination, FLSA, and Illinois Minimum Wage law claims); *Teamsters Loc. Union No. 727 Pension Fund v. Capital Parking, LLC*, No. 19 C 837, 2019 WL 6210955, at *2–3 (N.D. Ill. Nov. 21, 2019) (ERISA and Labor Management Relations Act claims).

At this stage of the proceeding, Godinez has separately and adequately alleged alter ego liability for all defendants. Alter ego liability under Illinois law allows corporate veil piercing where there is (1) "such unity of interest and ownership that the separate personalities … no longer exist"; and (2) "circumstances [are] such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Banco Panamericano, Inc.*, 674 F.3d at 751–52 (cleaned up); *see also Gajda v. Steel Sols. Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 24 ("Although piercing the corporate veil is often used to reach the assets of an individual for conduct of a corporation, courts may pierce the corporate veil of two affiliated or "sister" corporations."). To determine whether there is unity of ownership and interest that would justify alter ego liability, the Court looks at a number of factors including failure to observe corporate formalities, commingling of funds, failure to maintain arm's-length relationships among related entities, and "whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders." *Gajda*, 2015 IL App (1st) 142219, ¶ 24 (quoting *Buckley v. Abuzir*, 2014 IL App (1st) 130469,

¶ 15). "No single factor is determinative," *see UIRC-GSA Holdings Inc. v. William Blair & Co., L.L.C.*, 289 F. Supp. 3d 852, 858 (N.D. Ill. 2018) (citing *Banco Panamericano, Inc.*, 674 F.3d at 756), and not all factors must be met for alter ego liability to exist, *see, e.g., id.* at 860; *Capital Parking, LLC*, at *2.

Godinez has adequately alleged a unity of ownership and interest. Godinez relies primarily on *Nicks*, which the Court also finds instructive. [23] at 5–6. In *Nicks*, which involved an FLSA collective action for minimum wage and overtime violations in several states, the defendants argued that certain subsidiary companies should be dismissed because the plaintiffs had not adequately alleged that those subsidiaries "exercised any control over the named Plaintiffs such that they would qualify as their employer or joint employer." 260 F. Supp. 3d at 959. *Nicks* rejected that argument because the plaintiffs had alleged that all defendants had a centralized reporting and management structure; the policies and practices at all subsidiaries were set by the parent corporation; the parent company exercised operational, financial, and managerial control over the subsidiaries; all defendants "shared key managerial employees"; the defendants "all use one email domain and hold themselves out on their website as one, integrated entity"; and the defendants "all shared supplies and products." *Id.* at 962. In short, the *Nicks* defendants "held themselves out as one integrated system and operated as such." *Id.* (quoting *United States v. All Meat & Poultry Products Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 828 (N.D. Ill. 2007)); *see also Laborers' Pension Fund v. Green Demolition Contractors, Inc.*, 15 C 5633, 2016 WL 74682, at *3 (N.D. Ill. Jan. 7, 2016) (alter ego theory allowed where

9

defendants operated in same location, were owned and managed by same individuals, and shared employees for projects).

As discussed above, Godinez has pleaded facts showing a similar corporate entwinement between Episcope Hospitality and the other defendants: same training, same policies, same management, single website, same email address domains, shared employees, all centrally controlled by Episcope Hospitality. Godinez thus has adequately alleged facts showing that "these entities operate as one, single unified organization with various restaurant brands under its umbrella," [23] at 6, and has met the first prong of the alter ego liability test. Godinez also meets the second prong, because, as in *Nicks*, "[a]llowing [defendants] to use a fictional corporate structure to avoid compensating employees fairly" would "promote injustice," 260 F. Supp. 3d at 962; *see also Gleghorn v. Mika Logistics Inc.*, 21 C 1357, 2022 WL 1228195, at *4 (N.D. Ill. Apr. 26, 2022) (plaintiffs justified piercing corporate veil by adequately alleging "defendants were using the fiction of their separate corporate existence to avoid their contractual responsibilities and to ensure that they avoided liability"); *Capital Parking, LLC,* 2019 WL 6210955, at *2 (using corporate form to avoid required contributions to retirement fund "promoted injustice").

Defendants also argue that even if all defendants are joint employers for the purpose of liability under the Ordinance, the sick leave claims must be dismissed "because the Seventh Circuit has not recognized [joint employer] liability in Chicago Sick Leave Ordinance cases." [24] at 4. The Court is not persuaded for a number of reasons. Defendants do not explain why the Seventh Circuit must weigh in on

10

liability for an Illinois city ordinance. Nor is it clear when the Seventh Circuit would have had the chance to do so: neither party cites to any previous federal case involving the Ordinance. Indeed, defendants point to nothing other than the absence of a Seventh Circuit opinion expressly approving joint employer liability under the Ordinance for their contention that such liability is not allowed; they do not, for example, cite to any Illinois statute or court decision. And defendants do not explain why the rationale for joint employer liability in other contexts would not apply to the Ordinance. *See Brown v. City of N. Chicago*, 04 C 1288, 2006 WL 1840802, at *7 (N.D. Ill. June 28, 2006) ("The joint employer theory of liability is equally applicable in the context of Title VII and the ADA. To hold otherwise would be to permit an employer that would otherwise be subject to the ADA to avoid liability for its discriminatory conduct while maintaining control over [] employees ... Such a result would conflict with the remedial purposes of the anti-discrimination statutes."); *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 941 (7th Cir. 1999) ("The privilege of separate incorporation is not intended to allow enterprises to duck their statutory duties.").

Taking the facts in Godinez's complaint as true and making all reasonable inferences in her favor, the Court concludes that Godinez has adequately alleged joint employer liability against Episcope Hospitality and alter ego liability against all named defendants for the purpose of a Rule 12(b)(6) motion. Defendants' motion to dismiss Counts I and II is thus denied. Because Godinez has established liability under these theories, the Court does not reach her single-employer liability theory.

11

### B. Administrative Exhaustion (Counts III and IV)

Defendants next argue that Counts III and IV have not been administratively exhausted against most defendants and should be dismissed on that basis. [11] at 3. The Court agrees. A plaintiff must file a charge of employment discrimination with the relevant administrative agency before suing an employer under the ADA. *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018). This requirement serves two purposes: facilitating an opportunity to settle and providing notice of the conduct at issue to the employer. *See Mahran v. Cnty. of Cook*, 21-CV-6325, 2022 WL 11169418, at \*2 (N.D. Ill. Oct. 19, 2022). As a result, parties not named as a respondent in charge "may not ordinarily be sued in a private civil action." *Id.* (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)). This is also true of claims brought under the IHRA. *See Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 851 (N.D. Ill. 2021) ("To bring a claim in court under the IHRA, a plaintiff must first pursue and exhaust his administrative remedies").

Defendants argue that because only Episcope Mart, LLC is named as a respondent in the IDHR charge underlying Godinez's ADA and IHRA claims, those claims must be dismissed against the other defendants for failure to exhaust administrative remedies. [11] at 3–4; [24] at 1–2. For her part, Godinez contends that because "[t]hese companies are so intertwined that it is difficult to tell where one begins and another ends," all defendants "had notice and plenty of opportunities to attempt amicable resolution" prior to the complaint, and administrative remedies are thus exhausted for all defendants. [23] at 9–10.

12

In advancing this position, Godinez relies on an exception to the general rule that the Seventh Circuit recognized in *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890 (7th Cir. 1981). Under *Eggleston*, a plaintiff may sue a defendant not named in the charge of discrimination if that defendant (1) "knew or should have known of the charge and that [its] conduct would be subject to EEOC inquiry," and (2) the defendant had "been given an opportunity to participate in conciliation proceedings aimed at voluntary compliance with Title VII." *Id.* at 906.

Godinez has not met the second *Eggleston* prong, which requires that Godinez allege the unnamed defendants "had an opportunity to participate in conciliation proceedings." *Alam*, 709 F.3d at 666. In her complaint Godinez specifically states that she opted out of the IDHR administrative process—as she is entitled to do under state law—and thus "*every* Defendant [was prevented] from moving through the administrative process and seeking settlement in connection therewith." [23] at 10 (emphasis in original). This is supported by the opt-out notice attached to Godinez's complaint. [1-2]. In opting out, Godinez denied nearly every defendant the opportunity to conciliate on its own behalf. That all of the defendants ultimately might share liability under a joint employer or alter-ego theory of liability does not change this bottom line. *See Equal Employment Opportunity Comm'n v. Am. Flange*, 21 C 5552, 2022 WL 1693487, at *6 (N.D. Ill. May 26, 2022) ("[E]ven where a plaintiff can successfully establish an indirect employer's potential liability under [alter ego theory of liability], he must still exhaust his administrative remedies as to that indirect employer—or, alternatively, come within the *Eggleston* exception"); *see also*

13

*Wells v. Hosp. Grp. of Illinois, Inc.*, No. 02 C 6111, 2003 WL 21704416, at *4 (N.D. Ill. July 23, 2003) (that the relevant entities might be alter egos of one another did not relieve plaintiff of burden of showing that an unnamed party had "an opportunity to conciliate on its own behalf").

The Court recognizes that, per Godinez's complaint, Episcope Mart, LLC *also* did not have any opportunity to seek conciliation. [23] at 10 (emphasis in original). But the ADA and IHRA complaints survive against that entity for at least two reasons. First, defendants have not argued that Godinez failed to exhaust administrative remedies with regard to Episcope Mart, LLC. *See* [11] at 3–4. But even if the IDHR opt out might create some issue with administrative exhaustion—and it is not at all clear to the Court that it would—failure to exhaust is an affirmative defense, *see Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006), and is therefore subject to waiver, *see Volovsek v. Wisconsin Dept. of Agr., Trade & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003). Second, the *Eggleston* test upon which defendants rely is "an exception to the general rule that *a party not named in an EEOC charge* cannot be sued." *Am. Flange*, 21 C 5552, 2022 WL 1693487, at *5 (emphasis added); *see also Wells* No. 02 C 6111, 2003 WL 21704416, at *4 (same). But there is no dispute that Episcope Mart, LLC was named in the charge and right-to-sue letter, [11] at 3, and thus it falls outside of *Eggleston*.

Because was no opportunity for the other defendants to conciliate, Godinez has failed to allege that the ADA and IHRA claims against those defendants were

14

administratively exhausted.³ The Court thus grants defendants' motion to dismiss Counts III and IV against all defendants other than Episcope Mart, LLC.

### C. Class Allegations

Finally, defendants argue that Godinez has failed to "plead a plausible claim for class action treatment" that as a result her class action allegations should be "dismissed and/or stricken," presumably under Rule 12(b)(6). [11] at 6. In particular, defendants assert that the proposed class cannot be ascertained because defendants "would have no way of knowing" which of their employees qualified for sick leave, whether any employee attempted to utilize that leave, or whether that leave was taken for themselves or a family member. [11] at 6–7.

The Court finds defendants' assertion that they have "no way of knowing" which of their employees accrued or used sick leave to which they were entitled by law surprising. But the Court declines to reach the issue of ascertainably here. A motion to dismiss under Rule 12(b)(6) is distinct from a motion for class certification: "[A] motion to dismiss for failure to state a claim test the sufficiency of the complaint," *see McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.5 (7th Cir. 2012), while class certification requires the district court to engage in "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied," *Davis v. Hutchins,* 321 F.3d 641, 649 (7th Cir. 2003). "Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising

---

³ Because Godinez cannot satisfy the second *Eggleston* prong, the Court need not consider the first.

15

the plaintiff's cause of action, a decision denying class status by striking class allegations at the pleading stage is inappropriate." *Boatwright v. Walgreen Co.,* 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) (cleaned up); *see also Mednick v. Precor, Inc.,* 14 C 3624, 2014 WL 6474915, at *7 (N.D. Ill. Nov. 13, 2014); *Holtzman v. Caplice*, 07C7279, 2008 WL 2168762, at *3 (N.D. Ill. May 23, 2008) ("[D]efendant's motion to dismiss on the ground that the plaintiff has not adequately pled numerosity is denied as this is not a proper subject for a motion to dismiss.").

The Court thus denies defendants motion to dismiss the class allegations. If defendants wish to challenge the ascertainability of the class, they may do so if and when Godinez moves for class certification. *See Holtzman*, 2008 WL 2168762, at *3 ("The defendant may raise this challenge [to numerosity] in the context of a motion for class certification.").

## IV. Conclusion

For the reasons stated above, defendants' motion to dismiss [11] is denied with regard to Counts I and II, as well as the class allegations. The motion is granted with regard to Counts III and IV for all defendants except Episcope Mart, LLC. Godinez's motion to file a surreply [25] is denied as moot.

On or before July 1, 2025, the parties shall file a joint status report with a proposed discovery plan. The Court sets a status hearing on July 15, 2025, at 9:30 a.m.

_____
Georgia N. Alexakis
United States District Judge

Date: 6/5/25